UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:21-CR-253-1BO(3)

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | INDICTMENT |
| ) | |
| TANYA PARRISH GRANT ) | |

The Grand Jury charges the following:

## I. INTRODUCTION

### A. The Medicare Program

1. The Medicare Program is a federally funded health insurance program for eligible persons 65 years of age and older, and certain disabled persons, under which physicians, hospitals and other health care providers are compensated or reimbursed for covered medical services and supplies provided to Medicare beneficiaries.

2. Medicare is administered by the Centers for Medicare and Medicaid Services ("CMS"), which is an agency of the United States Department of Health and Human Services ("HHS").

3. To help administer Medicare, CMS contracts with private insurance companies called "Medicare Administrative Contractors" or "MACs." MACs perform

1

many functions, such as processing Medicare claims and enrolling suppliers into the Medicare program. In performing such functions, MACs are assigned to particular geographical "jurisdictions."

4. Medicare is made up of several component "parts" that cover different items and services. Medicare Part A, for example, covers inpatient hospital stays. Medicare Part B covers, among other items and services, outpatient care and supplies.

### B. Durable Medical Equipment ("DME") Suppliers

5. One form of supplies that Medicare Part B covers is what is known as Durable Medical Equipment, or "DME." DME includes orthotic devices, such as knee braces, back braces, shoulder braces, wrist braces, and other devices, including ultraviolet light therapy systems.

6. Under Medicare Part B, beneficiaries only receive Medicare-covered DME from "suppliers" that are enrolled in Medicare. To enroll, the prospective DME supplier must submit a completed enrollment application to Medicare. The enrollment applications lists many standards necessary to obtain and to retain Medicare billing privileges as a DME supplier.

7. Among other standards, DME suppliers are required to adhere to the following:

> a. An authorized individual (one whose signature is binding) must sign the application for billing privileges.

2

b. DME suppliers are prohibited from direct solicitation to Medicare beneficiaries.

c. DME suppliers must fill orders from their own inventory or, otherwise, have to contract with another company for the purchase of items to fill orders.

d. DME suppliers must maintain a staffed physical facility accessible to the public at least thirty hours per week, with visibly posted hours of operation.

e. DME suppliers must disclose any person having ownership, financial or control interest in the supplier DME.

f. DME suppliers must not convey or reassign a supplier number (i.e., the supplier may not sell or allow another entity to use its Medicare billing number); and

g. All DME suppliers must be accredited by a CMS-approved accreditation organization to receive and retain a supplier billing number.

8. DME suppliers must sign Medicare forms in which they agree to abide by all "laws, regulations, and program instructions" for Medicare. Among other agreements, DME suppliers must affirmatively represent the following:

> I agree to abide by the Medicare laws, regulations and program instructions that apply to me or to the organization listed in Section 1B of this application. The Medicare laws, regulations, and program

3

instructions are available through the fee-for-service contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations and program instructions[,] including, but not limited to, the Federal Anti-Kickback Statute, 42 U.S.C. section 1320a-7b(b)[.]

***

I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

9. Claims for DME supplies are submitted for payment to the MAC through an Electronic Data Interchange ("EDI") system. EDI is a computer-to-computer electronic exchange of business documents using a standard format. EDI allows a DME supplier the ability to transmit Electronic Media Claims ("EMC") to Medicare in a compliant format. Medicare, in turn, requires that a DME supplier complete a Common Electronic Data Interchange ("CEDI") agreement for EDI services with the DME MACs. The CEDI agreement, in electing to submit Medicare claims electronically, requires the DME supplier to agree to several terms and conditions. Such terms and conditions include the following requirements:

    a. That it will be responsible for all Medicare claims submitted to CMS or a designated CMS contractor by itself, its employees, or its agents.

    b. That it will submit claims only on behalf of those Medicare beneficiaries who have given their written authorization to do so,

4

and to certify that required beneficiary signatures, or legally authorized signatures on behalf of beneficiaries, are on file;

c. That it will submit claims that are accurate, complete, and truthful;

d. That it will affix the CMS-assigned unique identifier number (submitter ID) of the provider on each claim electronically transmitted to the A/B MAC, CEDI, or other contractor if designated by CMS;

e. That the CMS-assigned unique identifier number (submitter identifier) or "NPI" constitutes the provider's legal electronic signature and constitutes an assurance by the provider that services were performed as billed; and

f. That it will acknowledge that all claims will be paid from Federal funds, that the submission of such claims is a claim for payment under the Medicare program, and that anyone who misrepresents or falsifies or causes to be misrepresented or falsified any record or other information relating to that claim that is required pursuant to this agreement may, upon conviction, be subject to a fine and/or imprisonment under applicable Federal law.

10. Filing Medicare claims requires the submission of certain information relating to a specific patient or beneficiary. The information necessary for a DME

5

claim includes:

    a. the type of service provided, identified by an "HCPCS" code (meaning "Healthcare Common Procedure Coding System");

    b. the date of service or supply;

    c. the referring physician's National Provider Identifier ("NPI")

    d. the charge for such services or supplies;

    e. the patient's diagnosis;

    f. the NPI for the DME entity seeking reimbursement; and

    g. certification by the DME provider that the supplies are medically necessary.

11. Before submitting a claim for an orthotic brace to the DME MAC, a supplier is required to have on file the following:

    a. written documentation of a verbal order or a preliminary written order from a treating physician;

    b. a detailed written order from the treating physician;

    c. information from the treating physician concerning the beneficiary's diagnosis;

    d. any information required for the use of specific modifiers;

    e. a beneficiary's written assignment of benefits; and

    f. proof of delivery of the orthotic brace to the beneficiary.

12. Under the Federal Anti-Kickback Statute, which DME suppliers must

6

acknowledge, suppliers are prohibited from routinely waiving copayments, which is the portion of the cost of an item that is required to be paid by the patient or beneficiary.

### C. Carolina Rehab Products, Inc. and Blue File DMC, LLC

13. TANYA PARRISH GRANT was an individual residing in the Eastern District of North Carolina who owned and controlled DME suppliers who billed Medicare for a profit.

14. Carolina Rehab Products, Inc. (CRP) was a Medicare-enrolled DME supplier located at 6900 Six Forks Road in Raleigh, North Carolina. GRANT was the president of CRP and was responsible for the operations of the company. CRP also operated under the name Atlantic Brace, LLC. CRP enrolled with Medicare as a medical supply company in or about December of 2012, with GRANT identified as the owner. Between 2014 and the time of this Indictment, GRANT has regularly certified that she and CRP would abide by all laws, regulations, and Medicare program instructions. CRP has submitted claims for DME to Medicare continuously from 2014 to the date of this Indictment.

15. Blue File DME, LLC (BFD) was a Medicare-enrolled DME supplier located at 1204 North Ellis Avenue, in Dunn, North Carolina. Although GRANT's name does not appear on formation or Medicare documentation, GRANT was involved in the enrollment of BFD with Medicare, and was directly involved in the management, oversight, and billing activities of BFD. BFD has submitted claims for

7

DME to Medicare from November of 2016 to the date of this Indictment.

16. In addition to GRANT's role in their operation, CRP and BFD share several common employees. CRP and BFD also pay many of the same entities, bill for many of the same products, and even submit DME claims for many of the same patients.

### D. Prior Investigation

17. In or about 2015 GRANT and CRP became the subject of a federal investigation following a complaint that CRP billed Medicare for the delivery of DME without an order from a physician. The investigation also revealed that GRANT was paying commissions for patient referrals.

18. In or about December 2015, as a result of audits and administrative actions conducted by Medicare contractors, GRANT caused CRP to submit a corrective action plan to Medicare. As a part of that action plan, GRANT represented that she and CRP would:

  (a) Refrain from accepting or paying referral commissions;

  (b) Develop and submit billing claims that adhere to applicable Federal and State statutes, rules, and regulations;

  (c) Refrain from providing medical services or equipment that CRP knows are not medically necessary;

  (d) Refrain from offering any inducement to obtain business;

  (e) Maintain signed and dated orders or certificates of medical necessity on file for all items and services; and

8

(f) Not bill for an item or service without a direct order from a licensed physician or other authorized person.

19. The federal investigation of GRANT and CRP also entailed whether GRANT was involved in the financing or business operations of BFD, which had only recently been created. BFD's enrollment documentation as a DME supplier for Medicare did not reflect that GRANT had a managerial role in BFD. GRANT was made aware of this aspect of the investigation.

### F. The Scheme and Artifice to Defraud

20. Beginning at a time unknown, but no later than September 28, 2018, and continuing through the date of this Indictment, GRANT, aiding and abetting CRP and BFD through their employees, executed a scheme and artifice to defraud Medicare by submitting false and fraudulent claims for DME, and engaging in various other fraudulent acts described herein.

21. GRANT caused CRP and BFD to pay multiple individuals and entities (collectively referred to herein as "PII Sources") to supply her with personally identifying information, medical information, and billing information for Medicare beneficiaries. In some instances, GRANT paid the PII Sources for supplying her with medical records and signed prescriptions for DME. GRANT then utilized this information to cause CRP and BFD to bill Medicare for DME, regardless of whether the beneficiaries actually requested the DME, or whether CRP and BFD had a genuine physician order on file to support the provision of the DME. The majority

9

of the revenue for CRP and BFD during this time period was derived from payments to PII Sources, rather than genuine DME orders.

22. GRANT caused CRP to file at least 1,464 DME claims to Medicare on behalf of at least 422 beneficiaries who were deceased. These claims alone resulted in CRP billing more than $347,000 to Medicare. GRANT also caused BFD to submit DME claims on behalf of deceased beneficiaries.

23. GRANT caused CRP and BFD to submit more than $50,000 in DME claims to Medicare where the physician who allegedly authorized the order was already deceased.

24. In conjunction with Medicare program audits, in which CRP was required to produce documentation (including signed physician orders or certifications) to justify prior DME claims, GRANT forged and caused to be forged physician orders and certifications to support DME claims that had already been billed to Medicare. GRANT further caused these forged orders to be delivered to Medicare program contractors to prevent the discovery of the scheme. Delivery of the forged and fabricated supporting documentation also potentially prevented the recoupment of funds on the corresponding claims, and the potential suspension of CRP authorization to bill Medicare.

25. In some instances, CRP and BFD's claims were denied after CRP and BFD had already shipped DME to a Medicare beneficiary. Rather than directing the patient to pay for the DME, or causing the DME to be returned, GRANT caused CRP

10

and BFD to file a fictitious DME claim, or series of claims, to make up for the loss on the prior denied claim.

26. In furtherance of the scheme, GRANT also caused CRP and BFD to routinely fail to collect copayments from Medicare beneficiaries on DME claims.

## COUNT ONE

27. Introductory paragraphs 1 through 26 are realleged and incorporated as though fully set forth in this count.

28. Beginning at a time unknown, but no later than September 28, 2018 and continuing to the date of this Indictment, in the Eastern District of North Carolina and elsewhere, TANYA PARRISH GRANT, defendant herein, aiding and abetting others known and unknown to the grand jury, knowingly and willfully executed and attempted to execute the above-described scheme and artifice to defraud, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicare, a health care benefit program as defined in Title 18, United States Code, Section 24(b), in connection with the delivery of and payment for health care benefits, items, and services, to wit, durable medical equipment as described herein, in violation of Title 18, United States Code, Sections 1347 and 2.

## FORFEITURE NOTICE

The defendant is given notice that all of the defendant's interest in all property specified herein is subject to forfeiture.

Upon conviction of the offense set forth in Count One of the Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7) and Title 18, United States Code, Section 981 (a)(1)(C), the latter as made applicable by 28 U.S.C. § 2641(c), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

The forfeitable property includes, but is not limited to, the following:

Forfeiture Money Judgment:

a) A sum of money representing the gross proceeds of the offense(s) charged herein against TANYA PARRISH GRANT, in the amount of at least $13,410,071.78.

Real Property:

(a) Real property (condominium) having the physical address of 910 Oberlin Road, Unit 101, Raleigh, Wake County, NC 27605, including any and all appurtenances and improvements thereto, being titled in the name of TANYA P. GRANT, unmarried, and more fully and legally described in a North Carolina General Warranty Deed recorded at Book 17583, Page 0683-0685 of the Wake County Registry, North Carolina, and any and

12

all proceeds from the sale of said property.

(b) Real property (townhome) having the physical address of 2737 NE 15th Street, Unit 2737, Ft Lauderdale, Broward County, FL 33304, including any and all appurtenances and improvements thereto, being titled in the name of TANYA GRANT, a single woman, and more fully and legally described in a deed recorded as Instrument No. 117246599 on May 5, 2021 in Broward County, Florida, as Unit 2737, Lot 5, Block 12, Parcel ID #494236-02-1640, recorded in Plat Book 21, Page 50.

(c) Real property (storage facility and associated acreage) having the physical address of 964 Brick Mill Road, Coats, Harnett County, North Carolina 27521, including any and all appurtenances and improvements thereto, being titled in the name of TANYA PARISH GRANT, unmarried, and more fully and legally described in a North Carolina General Warranty Deed recorded at Book 3662, Pages 970-972, of the Harnett County Registry, North Carolina, and in a Warranty Deed recorded at Book 3738, Pages 834-835, of the Harnett County Registry, and any and all proceeds from the sale of said property. This property totals approximately 11 acres, consisting of the following: (1) one tract of approximately 10.09 acres (Tract 1, PIN #0690-30-0290.0000), as shown in Map Book 2018, Page 329, Harnett County Registry; and (2) one parcel of approximately .85 acres (Parcel A, PIN #0599-39-

4776.0000), as shown in Map Book 2018, Page 330, Harnett County Registry; and (3) one parcel of approximately .06 acre (Area B-2) as shown on "Recombination Survey Map for Tanya Parrish Grant and Raynor Builders Inc. recorded in Map Book 2019, Page 314, Harnett County Registry).

Personal Property:

(d) All funds or assets held in or seized from First Bank Account No. *2218, currently held in the name of Carolina Rehab Products, Inc;

(e) All funds or assets held in or seized from United Community Bank Account No. *5001, currently held in the name of Blue File DME, LLC;

(f) All funds or assets held in or seized from Regions Bank Account No. *6153, currently held in the name of CRP Med;

(g) All funds or assets held in or seized from PNC Bank Account No. *1226, currently held in the name of Tanya Grant;

(h) All funds or assets held in or seized from PNC Bank Account No. *3859, currently held in the name of Tanya Grant;

(i) All funds or assets held in or seized from PNC Bank Account No. *3867, currently held in the name of Tanya Grant;

(j) All funds or assets held in or seized from PNC Bank Account No. *3832, currently held in the name of Tanya Grant;

(k) All funds or assets held in or seized from UBS account ending *1931 held

14

in the name of Carolina Rehab Products, Inc;

(l)  All funds or assets held in or seized from UBS account ending *2193 held in the name of Carolina Rehab Products, Inc;

(m) All funds or assets held in or seized from UBS account ending *1509 held in the name of Tanya Grant;

(n) 2017 Porsche 911 Carrera Convertible, VIN: WP0CB2A97HS154883, titled to Atlantic Brace, LLC;

(o) 2017 Ford F-150 Raptor Truck, VIN: 1FTFW1RG6HFB65669, titled to Atlantic Brace, LLC;

(p) 2017 Land Rover, Range Rover MP, VIN: SALGS5FE2HA340001, titled to Atlantic Brace, LLC;

(q) 2017 Land Rover, Range Rover MP, VIN: SALGS2FE5HA328004, titled to Atlantic Brace, LLC;

(r) 2016 Land Rover, Range Rover MP, VIN: SALGS2EF3GA306754, titled to Atlantic Brace, LLC;

(s) 2017 Jeep Grand Cherokee, VIN: 1C4RJFAG2HC797669, titled to Allen Cooper Jackson, Jr.;

(t) 2016 Chris Craft, 23' Catalina Center Console Boat, Vessel Hull ID#CCBCA274D616 with Yamaha 300 outboard, Serial#6CEX1030723, titled in the names of Tanya P. Grant and Allen Cooper Jackson, Jr.;

(u) 2018 EZ Loader Boat Trailer, Model: TAB 21-25 6200, VIN:

15

1ZEVABSG4JA000049, titled in the names of Tanya P. Grant and Allen Cooper Jackson, Jr.;

If any of the above-described forfeitable property, as a result of any act or omission of the defendant --

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third party;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

A TRUE BILL

Foreperson

Date: 6/16/2021

**REDACTED VERSION**
Pursuant to the E-Government Act and the federal rules, the unredacted version of this document has been filed under seal.

G. NORMAN ACKER, III.
Acting United States Attorney

BY: WILLIAM M. GILMORE
Assistant United States Attorney

16